FRANK N. DARRAS #128904, Frank@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

DarrasLaw

3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone:  (909) 390-3770
Facsimile:  (909) 974-2121

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| WILLIAM WARBURTON,<br><br>Plaintiff,<br><br>vs.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; AETNA LIFE INSURANCE COMPANY; and, HOLTHOUSE CARLIN & VAN TRIGT LLP WELFARE PLAN,<br><br>Defendants. | Case No:<br><br>COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |
|---|---|

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by Plaintiff for disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that the Holthouse Carlin & Van Trigt LLP Welfare Plan ("Plan") is an employee welfare benefit plan established and maintained by Holthouse Carlin & Van Trigt, LLP, ("HOLTHOUSE"), to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, WILLIAM WARBURTON ("Plaintiff" and/or Mr. WARBURTON"), with income protection in the event of a disability and is the Plan Administrator.

4. Plaintiff alleges upon information and belief that Defendant, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY ("HARTFORD"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Connecticut, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges upon information and belief that Defendant, AETNA LIFE INSURANCE COMPANY ("AETNA"), is and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Connecticut, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

6. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that defendant HARTFORD, which fully insured the policy and which is ultimately liable if Plaintiff is found disabled, may be found in this district. Plaintiff alleges upon information and belief that, since on or about July 10, 1973, HARTFORD has been registered as a corporation with the State of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

7. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that defendant AETNA, which fully insured the policy and which is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about January 13, 1904, AETNA has been registered as a corporation with the state of California, has extensive contacts within the state, employs California residents, conducts



1  ongoing business within the state and therefore, may be found within the state.

2      8.    At all relevant times Plaintiff resided in Ventura County, California, was an
3  employee of HOLTHOUSE, its successors, affiliates and/or subsidiaries, and a
4  participant in the Plan.

5      9.    Based upon information and belief, Plaintiff alleges that at all relevant
6  times herein Plaintiff was covered under group disability policy number GP-803905-GI
7  (the "Policy") that had been issued by Defendants AETNA, HARTFORD, and the Plan
8  (collectively, "Defendants") to HOLTHOUSE to insure its Plan, and the eligible
9  participants and beneficiaries of the Plan, including Plaintiff.

10     10.    The subject Policy promised to pay Plaintiff monthly long term disability
11 benefits for a specified period of time should he become disabled. Therefore,
12 Defendants both fund and decide whether claimants will receive benefits under the Plan
13 and as such suffer from a structural conflict which requires additional skepticism.

14     11.    Based upon information and belief, Plaintiff alleges that, according to the
15 terms of the Plan, if Plaintiff became disabled, Defendants promised to pay long term
16 disability benefits to Plaintiff as follows:

17     • Maximum Disability Benefit: $15,000 per month.
18     • Elimination Period: 90 Days
19     • Test of Disability:
20         ○ From the date that you first become disabled and until monthly
21           benefits are payable for 24 months, under this plan you are totally
22           disabled when you are not able to perform with reasonable
23           continuity the substantial and material acts necessary to pursue
24           your own occupation in the usual or customary way and you are not
25           working in your own occupation.
26         ○ After the first 24 months that any monthly benefit is payable during
27           a period of disability, under this plan you are "totally disabled" when
28           you are not able to engage with reasonable continuity in any

occupation in which you could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity that exists within any of the following locations:

- A reasonable distance or travel time from your residence in light of the commuting practices of your community; or
- A distance or travel time equivalent to the distance or travel time you traveled to work before becoming disabled; or
- The regional labor market, if you reside or resided prior to becoming disabled in a metropolitan area.

12. Prior to his disability under the terms of the Plan, on or about December 24, 2018, Plaintiff was working as a Certified Public Accountant ("CPA") and Partner at HOLTHOUSE.

13. However, Plaintiff became disabled under the terms of the Plan and timely submitted a claim to Defendants for payment of disability benefits.

14. Defendants initially determined Plaintiff was disabled and qualified for benefits under HOLTHOUSE's short term disability plan.

15. Defendants subsequently paid Plaintiff short term disability benefits through the short term maximum benefit period of March 31, 2019.

16. However, on or about November 11, 2019, Defendants unreasonably and unlawfully denied his long term disability claim. And, on or about May 18, 2020, Defendants unreasonably and unlawfully upheld the denial of the disability claim.

17. According to Defendants' denial letters:

- **November 11, 2019**: "We've reviewed the Long-Term Disability (LTD) claim (claim #24925426) you submitted for your absence from work from 12/24/18. Based on our review, your claim has been denied. …If this disability claim has been denied in whole or in part, or if you feel your claim should be certified for a longer

period, you can ask us to look at it again. This is called an Appeal. …If you don't agree with our appeal decision, you can file a law suit under section 502(a) of a law called ERISA, and the appeal decision will include notification of the date on which your right to bring a civil action expires under the Policy."

- **May 18, 2020**: "We finished reviewing your appeal for the Long-Term Disability (LTD) claim (claim #24925426). After review, we agreed with the original decision to deny your benefits as of March 24, 2019. …Since we've made our final decision, no other action will be taken by us. …If you don't agree with the final appeal decision, you can file a lawsuit under section 502(a) of a law called ERISA."

18. In so doing, Defendants unreasonably and unlawfully failed to timely identify the medical personnel who reviewed Plaintiff's file; relied upon the opinions of physicians who were financially biased and/or not qualified to refute the findings of Plaintiff's board certified physicians; relied strictly upon physical requirements of occupations instead of taking into consideration the non-exertional requirements of Plaintiff's own, or any, occupation; and misrepresented the terms of the Policy.

19. Additionally, Defendants knew, or should have known, that the documentation submitted to and/or obtained by Defendants clearly substantiated Plaintiff's disability, and entitled him to benefits under the Plan.

20. To date, even though Plaintiff has remained disabled, Defendants have not paid Plaintiff any long term disability benefits under the Policy and/or Plan. The unlawful nature of Defendants' denial is evidenced by, but not limited to, the following:

- Defendants engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to promptly identify the medical consultants who reviewed his file; and, failing to timely advise Plaintiff of what specific documentation it needed from him to perfect his

claim; and,

- Defendants ignored the obvious, combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim; and,

- Defendants ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians.  Deference should be given to the treating physicians' opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file.  Further, Defendants' highly conflicted physician opinions do not serve as substantial evidence, as it is not supported by evidence in the claim file, was not issued by a physician with the same level of medical expertise as the board certified treating physicians, nor is it consistent with the overall evidence in the claim file.

21. For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, irrational, contrary to the evidence, contrary to the terms of the Plan and contrary to law.

22. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

23. As a direct and proximate result of Defendants' failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about March 24, 2019.

24. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees and costs to pursue this action, and is entitled to have such fees and costs paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

25. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan definition of disability and consequently he is entitled to all benefits from the Plan to which he might be entitled while receiving disability benefits, including but not limited to waiver of any life insurance premiums, with reimbursement of all expenses and premiums paid for such benefits since December 24, 2018. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid Plaintiff beginning on or about March 24, 2019 together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plan to which he might be entitled while receiving disability benefits, including but not limited to any waiver of any life insurance premiums, with reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

2. An order determining Plaintiff is entitled to disability payments/benefits so long as he remains disabled as defined in the Plan;

3. For reasonable attorney fees and costs incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated: December 22, 2021

DarrasLaw

_____
PHILLIP S. BATHER
Attorneys for Plaintiff